[Crim. No. 1310.   Fourth Dist.   July 22, 1957.]

THE PEOPLE, Respondent, v. DONALD LeROY LONG, Appellant.

Donald LeRoy Long, in pro. per., and Louis S. Katz, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Carl Boronkay, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged in three counts with issuing checks without sufficient funds, in violation of section 476a of the Penal Code. The first count related to three checks totaling $55 drawn on the Security Trust and Savings Bank in San Diego; the second count to three checks totaling $70 drawn on the Coronado Branch of the Bank of America; and Count 3 to three other checks totaling $75 drawn on the Security Bank. He was also charged with a prior conviction in Virginia, and two prior convictions for forgery in California, for which prison terms were served. He pleaded not guilty, admitted the two prior convictions of forgery and denied the prior conviction in Virginia. At the trial he refused the services of an attorney and appeared in propria persona. A jury found him guilty on all three counts. His motion for a new trial was denied and he was sentenced to prison on each count, the sentences to run consecutively with regard to Counts 1 and 2 and with the sentence on which he was then on parole, and concurrently with regard to Count 3.

He filed a notice of appeal from the judgment, and filed an opening brief. Thereafter, he requested the appointment of counsel, and a supplemental brief was filed by counsel so appointed.

The evidence shows, with respect to Count 1, that the defendant opened an account on June 15, 1956, at the Security Bank with a deposit of $5.00. A further deposit of $20 was made on June 25, but checks cashed reduced his balance on that date to $9.00, and he had then issued a check for $170 and three other checks which were not honored. On June 25 and June 26, the defendant drew the three checks described in Count 1, two for $20 each and one for $15, which he cashed at stores by making small purchases and taking the balance in cash.

With respect to Count 2, it appears that the defendant opened an account at the Coronado Branch of the Bank of America on July 2, 1956, with a deposit of $30, and no additional deposit was ever made. On the same day the balance in that account was reduced to $5.00. Within a few days two checks for $25 and one for $20 were cashed at another branch of the Bank of America and rejected for insufficient funds when received at the Coronado Branch. Altogether nine checks totaling $175 were drawn on this account and rejected by the bank when presented for payment.

With respect to Count 3 the evidence shows that between June 25 and July 11 some 15 checks were drawn on defendant's account in the Security Bank, on which payment was rejected because of insufficient funds.

The defendant admitted before and at the trial that when these checks were drawn he knew that he had not sufficient funds or credit with the banks to provide for their payment. His defense was that several persons owed him money and that he hoped to receive payment and make deposits before the checks reached the bank; that he cashed some of the checks on Friday night trusting that the checks would not reach the bank until he had made a sufficient deposit on Monday morning; and that he postdated some of the checks. He admitted that he did not call this postdating to the attention of the person to whom the checks were given.

It is first contended that the evidence with respect to the second count was insufficient to sustain a conviction. It is argued that an officer of the San Diego Branch of the Bank of America, where the three checks described in that count were cashed, testified as to what was done at the Coronado

Branch of that bank, which was hearsay; that this officer testified that this account was opened on July 2 while the person who opened the account at the Coronado Branch testified that it was opened on June 29; that there was no "prosecution" evidence that the defendant either wrote or issued these checks; and that there was no evidence as to whether the defendant had indicated at the time these checks were cashed whether or not he had sufficient funds to cover them. Not only was no objection made at the trial that any of the evidence was hearsay but there was ample competent evidence showing the opening of and condition of this account at the times in question, and the defendant admitted that he wrote and cashed the checks and that he knew at that time that there was not sufficient funds in his account to pay them.

It is next contended that defendant's conviction on the first count was obtained as a result of an illegal search and seizure. It is argued that a police officer testified that he removed several checks from the property of the defendant at the city jail; that these checks were the ones involved in Count 1; that the court refused to allow the defendant to ask this officer whether he had received permission to make the search; that this search of defendant's property did not comply with section 1542 of the Penal Code; and that these checks were not admissible as evidence. The defendant talked to this officer at the jail at 9 o'clock on the morning of July 6, with reference to reports of several bad checks issued by him. The defendant expressed a desire to go out and raise some money and take up these checks, and he was permitted to go. About 4 o'clock that afternoon he returned and had another conversation with the officer, at which time other information had come to the officer. At that time he was arrested and booked, and the contents of his pockets were taken and placed in an envelope in the jail. Among these things were the checks in question. There was ample reason for the officer to believe that these offenses had been committed, the property was taken after the defendant was arrested and placed in jail, and no illegal search or seizure appears. The provisions of section 1542 of the Penal Code are not applicable here. A further consideration is that there was ample evidence, including the admissions and testimony of the defendant, to support a conviction on Count 1 without the introduction into evidence of the checks themselves. When the officer was asked whether, at the time of the interview on the morning of July 6, he believed there was any basis for the arrest of the defendant

an objection was sustained on the ground that it was immaterial. The defendant was not arrested at that time and neither error nor prejudice appears.

It is claimed that the court committed prejudicial error in connection with several matters. ■ It is argued that the court improperly inquired into the facts of the defendant's prior conviction. After the defendant stated that he had been convicted of forgery the court asked him "What did you forge?" The defendant replied that he had forged a check and "We cashed them," and the court then asked if he had forged two different documents. The defendant replied "That is true," and that he had forged 10 checks but only seven of them were passed. The court's inquiry related essentially to the nature of the prior felony, no objection was made, and in view of all of the evidence no prejudice appears. ■ It is claimed that the court indicated its disbelief of defendant and his witnesses, and showed that he was biased against the defendant, by saying "You have brought in a bunch of witnesses so far that have nothing to do with the case. I have let you go on because I always hope that sometime when you ask these questions you may ask something material. So far I haven't found anything." This remark was part of the court's reply to the defendant's suggestion that a certain man about whom he had been talking, who was then out of the county, should be subpoenaed as a witness. It is obvious from what had been said about this man that there was no connection between the possible evidence thus suggested and the issues before the court. The defendant had already called eight witnesses and examined them at great length, with a result that fully justified the court's remark. Throughout the case the court showed great patience with the defendant and frequently, when objections to his questions were made, told him how to proceed in order to get that evidence in. ■ It is contended that the court was guilty of pure argument by stating in his instructions that postdating a check is not a defense unless the fact of postdating is discussed at the time of issuing the check with the person who cashes the check; and that no evidence of postdated checks was here presented. The defendant had said several times during the trial that he had postdated some of the checks received in evidence, and no prejudice appears in this connection. The same is true of the court's mentioning the fact that the defendant had put a false address on some of the checks, and of the court's mentioning the fact of defendant's having been on

parole. ■ The fact that he was on parole had been brought out by the defendant in his examination of his parole officer and of a police officer, and the fact of parole was well known to the jury. ■ It is argued that the statement ''The main thing they are interested in is when you wrote the check did you have any money in the bank to cover it,'' made by the court, indicated to the jury that the lack of sufficient funds in the bank was sufficient to show guilt regardless of the lack of intent. This statement was made while the defendant was cross-examining an officer of one of the banks with respect to an address written on one of the checks, and the court had just said that the matter of the defendant's giving his right address was ''just one of the items that goes to intent.'' In making the statements complained of the court was referring to the evidence then being elicited from that witness. The jury was fully instructed that the gist of the offense charged is fraudulent intent; that an intent to defraud is one of the necessary elements of the crime charged; that such intent must exist at the time when the check is drawn or delivered; and that it is necessary, in order to sustain a verdict of guilty, that the evidence show that the check in question was drawn or issued wilfully and with intent to defraud.

■ It is further contended that the court, by one instruction, took away from the jury the discretion to find the defendant guilty of a misdemeanor instead of a felony. It is argued that the jury might have found the defendant guilty of passing only one check, with respect to any of the counts, which would have made the offense punishable by a jail sentence under section 476a, subdivision (b), of the Penal Code. By its own terms that section has no application here since the defendant admitted a prior conviction for forgery.

■ The final contention is that the judgment incorrectly recited that the defendant admitted three rather than two prior convictions, which requires that the case be remanded for resentencing. The defendant was charged with a prior conviction in Virginia, and with two prior convictions for forgery in California. He admitted the two convictions for forgery, but denied the conviction in Virginia. No evidence was received at the trial with respect to the conviction in Virginia, and the jury was given no opportunity to pass on that. However, the commitment recites that the defendant on arraignment pleaded not guilty of the offenses charged in the information ''and admits three prior convictions of a felony.'' This requires a modification of the commitment

and a remanding of the cause for resentencing, since it cannot be said that the trial court was not influenced, in sentencing the defendant to consecutive rather than concurrent terms, by its mistaken determination as to the number of prior convictions of felony. (*People* v. *Morton,* 41 Cal.2d 536 [261 P.2d 523]; *In re Bartges,* 44 Cal.2d 241 [282 P.2d 47].)

The commitment is modified by striking therefrom the words "admits three prior convictions of a felony" and inserting in lieu thereof the words "admits two prior convictions of a felony." The cause is remanded to the trial court and that court is ordered to arraign the defendant for judgment upon the record as amended, and to resentence the defendant upon such terms as may then appear to be proper. Otherwise, the judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 18, 1957.