JAMES HINTON, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 5151

January 19, 1968 436 P.2d 223

*Charles L. Kellar,* of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General, *Mark C. Scott, Jr.,* District Attorney, and *Phillip M. Marfisi,* Deputy District Attorney, Elko County, for Respondent.

# OPINION

By the Court, ZENOFF, J.:

Defendant appeals from a conviction for armed robbery.

The complainants were four young men from New Zealand, Canada and Australia, who undertook a work-travel tour of the United States. They entered this country from Canada and proceeded down the west coast. In Roseville, California, they were forced to abandon their old automobile and caught an east-bound freight train. Traveling in the same empty freight car were appellant James Hinton and his companion, John Jones.

Somewhere between Sparks, Nevada, and Carlin, Nevada, the complainants alleged that they were awakened by Hinton and Jones, who held a flashlight by the light of which the two could be seen brandishing a knife and a .38 revolver. Hinton held the flashlight and the gun, while Jones robbed the young men of watches, money (including traveler's checks) and passports. They were then forced to lie prone for about five hours at gunpoint in the freight car until, at Carlin, the train stopped and the two men left the car closing the door behind them. Hinton, age 42, a three-time felon, and admittedly a past master at freight car traveling, knew that the door could not be opened from the inside, and that by closing the door anyone inside the freight car would be effectively locked in. Within a matter of minutes, however, the banging and yelling of the four victims attracted the attention of a railroad employee who opened the door and freed them.

A call to the Carlin police brought officer Pacini to the railroad yard. He was told of the robbery. Given a description of Hinton and Jones, he remembered having seen two men matching the description near the yard. With the young men in his car they drove to the nearby highway where the two men were located and arrested. They were placed under immediate arrest, compelled to lie against an embankment and were searched. The gun, knife and passports were found on their persons.

Soon thereafter they were taken to the jail. There, canvas bags which Hinton and Jones were carrying, were searched. Watches, other passports, traveler's checks, dice and money were found.

Hinton's version (Jones was severed from this trial) differs. He contended that during the train ride he won all of the possessions in a crap game in the freight car. He said he had taken the passports to insure that the boys would sign over their traveler's checks to him. He and Jones, he claimed, left the freight car because they were afraid that the boys would gang up on them to get their money back. He explained the possession of the gun as, "it was better to run the risk of having the police catch him with it, than having his associates catch him without it."

The jury accepting the story of the wayfarers, found Hinton guilty; the court sentenced him for from five to ten years for armed robbery.

As one assignment of error Hinton contends that there were no grounds for the arrest and, therefore, the search and seizure was improper and the evidence (the gun, knife and other items) improperly admitted. He contends, also, that he received no receipts for the articles taken at the time of the seizure, that he was not warned of his constitutional rights, that it was improper of the arresting officer to give the articles taken from him over the complaining witnesses, and that the searching of his bags in the police station without a search warrant was not legally permissible.

1. An officer may make a felony arrest if he has reasonable cause to believe that the person arrested has committed a felony. NRS 171.235.[1] Reasonable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that a felony had been committed by the person arrested. Nootenboom v. State, 82 Nev. 329, 418 P.2d 490 (1966). The arresting officer was told by four young men in the dark hours of early morning of the circumstances of being robbed at gunpoint, was given a clear description of the assailants, and immediately thereafter accosted the persons answering the descriptions. The "sufficient" cause to arrest was ample.

___

[1]NRS 171.235. *"Arrests by peace officers.*

"1. A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

(a) For a public offense committed or attempted in his presence.

(b) When a person arrested has committed a felony, although not in his presence.

(c) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

(d) On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested."

2. From the scene of the arrest on the highway everyone present, the arresting officer, the complaining witnesses and Hinton and Jones, went to the nearby jail in Carlin where the bags were emptied and the watches, money and other items discovered. As a continuation of the search already started on the highway no search warrant was necessary. Arabia v. State, 82 Nev. 453, 421 P.2d 952 (1966); Nootenboom v. State, supra; see also Heffley v. State, 83 Nev. 100, 423 P.2d 666 (1967), where evidence discovered in an automobile during a proper inventory practice was admissible.

3. Appellant contends he was not advised of his constitutional rights. However, since no statements or admissions were obtained from the defendant nor used against him at trial, there is no merit to this assignment of error.

4. The failure of the arresting officer to give defendant a receipt for the articles that were sequestered creates no issue. The purpose of a receipt is to inventory items taken and to establish a chain of custody thereafter. Thus, when the items are proposed into evidence, identification presents no problem. But here the identification and possession were always conceded. The only dispute related to the question of how possession of these items was acquired by Hinton and Jones.

5. This appeal was first argued before this court in June 1967. Hinton's counsel, who was not his attorney at the trial, was retained for the appeal by the National Association for the Advancement of Colored People, the NAACP. Counsel indicated that there were undertones of racial prejudice that materially and seriously concerned the treatment of the defendant, a Negro, from the very moment of his arrest. We were handicapped by the absence of a complete record and ordered a transcript of all of the proceedings which we now have. In our examination, nowhere do we find anti-Negro sentiment that would have influenced the fundamental fairness of the trial and verdict.

The arresting officer, once informed by the complaining witnesses of the details that have already been outlined, was fully justified in taking the precaution of immediately searching the appellant and his companion upon their arrest. A principal

reason for a search incident to an arrest is for the protection of arresting officers. Justification in this instance is the fact that the police were forewarned that Hinton and Jones were armed, and indeed, the gun and knife were found on their persons.

 ██

After Hinton had once waived a preliminary examination his later court-appointed counsel moved for remand which was granted. At the trial every juror was examined for possible racial bias but none was found. Hinton's trial lawyer passed each juror for cause.

Apparently there were no Negroes on the jury panel, nor is it likely that there would be Negroes on the panel available in every case because Elko has an extremely sparse population of members of that race. Nevertheless, there was no challenge to the panel nor are we now given any supporting data that lends credence to the accusation that Negroes in Elko County in a studied manner are kept off the juries. The burden is on the appellant to prove the existence of purposeful discrimination. Whitus v. Georgia, 385 U.S. 545 (1967).

 ██

During the trial one of the officers testified concerning the search of the bags and stated that he found various items, among them being some pictures of "nude, white women." No pictures were offered into evidence and the only reference to that statement was made by Hinton's counsel in his final argument to the jury. Undoubtedly, the statement was irrelevant but cannot be deemed error, nor in the light of the overwhelming facts was it inflammatory, if that was its intent.

Affirmed.

THOMPSON, C. J., COLLINS, BATJER, and MOWBRAY, JJ., concur.