[Crim. No. 8648.    Second Dist., Div. Two.    April 29, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. EUGENE JOSEPH McGLORY, Defendant and Appellant.

Cy H. Lemaire, under appointment by the District Court of Appeal, and Marvin Katz, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and C. Anthony Collins, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, J.—Appellant was convicted under Health and Safety Code, section 11530, for possession of a narcotic, to wit: marijuana, on or about June 24, 1962. Count one of the information charged possession of narcotics seized at the time

of arrest. Count two involved narcotics seized after a subsequent search of appellant's apartment.

The record shows that appellant, a Miss Thomas and one Singleton were sitting in the front seat of a parked car during the early morning hours of June 24, in an area designated by the police as a high frequency narcotics area. Appellant raised his hand over his head as two plainclothes officers of the Los Angeles Police Department drove by. One of the officers testified this hand movement, the character of the neighborhood and the early morning hour, aroused his suspicion. They stopped to interrogate the occupants of the car.

Asked by one of the officers what they were doing, appellant answered he was taking Miss Thomas home. Miss Thomas confirmed this. During the brief interrogation the officer turned his open flashlight into the car and noticed a bulge between Miss Thomas' breasts. Officer Anderberg asked her what the bulge was and Miss Thomas replied "What bulge, Officer?" Officer Anderberg forthwith ordered the occupants out of the car and both officers began a search for weapons. Miss Thomas was again asked about the bulge and this time asserted in a normal tone of voice that appellant had put it there and she didn't know what it was. Appellant was standing approximately 5 feet away at this time and said nothing. Singleton said nothing. Miss Thomas removed what turned out to be a bag of marijuana. The three were then placed under arrest.

Anderberg testified that after ordering the three persons into a police car, which had stopped at the scene, while the events detailed above were taking place, he asked appellant if he could search his apartment and appellant said, "Yes," and removed the apartment key from his keyring and gave it to the officer, saying that the rooms were unoccupied at the time. The officers went to the apartment, three blocks from the scene of the arrest, and used the key to enter. The officers neither knocked nor announced themselves, and upon entry found appellant's daughter and two other persons in the frontroom. A search produced another bag of narcotics. Appellant asserts illegal search and seizure. Appellant argues that the federal rules of search and seizure as interpreted in *Mapp* v. *Ohio*, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933], have replaced the California rules, and that under the *Mapp* rule the search in this case was illegal, and that it was also illegal under the law of California.

■ Appellant's argument on search and seizure has been answered in the recent case of *People* v. *Mickelson,* 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658]. At page 451, the court says: "A state rule governing police procedure is not unconstitutional merely because it permits conduct in which a federal officer may not lawfully engage. . . .

"The United States Supreme Court has not interpreted the Fourth Amendment as requiring . . . as a matter of constitutional law precise rules of police conduct. Indeed, its rule allowing a search by a federal officer without a warrant as incident to a lawful arrest permits reference to state law to determine the validity of the arrest. [Citations.] ■ Accordingly, before a state rule governing police conduct may be struck down, it must appear that neither Congress nor a state legislature could authorize it. If a state adopts rules of police conduct consistent with the requirements of the Fourth Amendment and if its officers follow those rules, they do not act unreasonably within the meaning of the amendment although different rules may govern federal officers."

Nor was the search and seizure, at the time of arrest, illegal under California law. ■ It is well established that a police officer can stop a person, out of doors at night, for the purpose of interrogation, when to a reasonable person such a course of conduct appears necessary to the discharge of his duty. (*People* v. *Alcala,* 204 Cal.App.2d 15 [22 Cal. Rptr. 31].) This rule strikes a balance between a person's interest in immunity from police interference and the community's interest in law enforcement. (*People* v. *Mickelson, supra,* 59 Cal.2d 448.) ■ The right to investigate gives rise to the right to conduct a reasonable search for weapons in order to protect the safety of the officer. If the search for weapons reveals contraband the officers are not required to ignore it. (*People* v. *Martin,* 46 Cal.2d 106 [293 P.2d 52]; *People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57].)

■ On the facts here detailed the police officers were justified in stopping to investigate the occupants of the car.

■ Alone, the original suspicion which caused the officers to stop would not justify an arrest, but the evasive answers of Miss Thomas concerning the bulge between her breasts would justify the inference that the bulge might be contraband. This, in turn, justified the search for weapons. The contraband uncovered by this search is therefore admissable.

Appellant argues that the search of the apartment was

illegal. Appellant's consent to the search is supported by substantial evidence. ■ The lone fact that consent to the search was given when appellant was under arrest, is not sufficient to negate the consent. Arrest at the time consent is given has been held to be significant in determining the voluntariness of the consent, but it is not conclusive. (*Castaneda* v. *Superior Court*, 59 Cal.2d 439 [30 Cal.Rptr. 1, 380 P.2d 641]. ■ No showing was made to the effect that appellant was at the mercy of the police and/or resigned to the inevitability of the search or that subsequent to his consent he tried to dissuade the officers from conducting the search. The trial court accepted the officers' testimony and we have no legal reason to disturb the trial court's finding that the consent was voluntary.

Appellant also argues that the court improperly found him guilty under Count two for possession of narcotics discovered in an apartment which was occupied by three other persons at the time the narcotics were found. Appellant does not deny his occupancy of the apartment. ■ Finding narcotics in a place under the possession and control of the appellant is sufficient to show possession under Health and Safety Code, section 11530. Exclusive possession is not required. (*People* v. *Bretado,* 178 Cal.App.2d 465 [3 Cal.Rptr. 216]; *People* v. *Magdaleno,* 158 Cal.App.2d 48 [322 P.2d 89].)

■ Finally, appellant contends that the testimony of Miss Thomas, an accomplice, was not sufficiently corroborated under Penal Code, section 1111. The record, however, presents no issue of corroboration. Miss Thomas testified as a witness on her behalf. The prosecution relied on the testimony of Officer Anderberg, who testified to the accusatory statements made by Miss Thomas in the presence of appellant and which appellant failed to deny, as evidence in support of Count one. This was sufficient evidence to sustain the verdict.

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 24, 1964. Peters, J., was of the opinion that the petition should be granted.