[Crim. No. 10854.   Second Dist., Div. Two.   Apr. 6, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND ROGERS, Defendant and Appellant.

Raymond Rogers, in pro. per., and Herbert L. Forer, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Doris H. Maier, Assistant Attorney General, for Plaintiff and Respondent.

FLEMING, J.—Raymond Rogers was convicted of burglary of the Kahlua Bar and burglary of the Alano Club (Pen. Code, § 459), with four prior felony convictions.

Rogers was apprehended while parked at 4 a.m. on a county highway adjacent to the City of Covina. Officer Melton, a Covina police officer who was patrolling Covina businesses abutting the road, noticed Rogers getting into a parked car across the street from establishments which had been frequently burglarized. He stopped his vehicle in the middle of the highway and asked Rogers what he was doing. The latter replied he had just fixed a flat tire. Officer Melton asked where the tire was. Rogers then said he hadn't fixed a flat tire but had pulled off the road to drink a can of beer. As the police officer checked Rogers' driver's license and car registration he noticed cartons and loose packages of candy and cigarettes in the back of the car. He radioed headquarters for assistance and while waiting asked Rogers if he had ever been in prison. Rogers replied he had done time for burglary, petty theft, and second-degree robbery. In a few minutes other officers arrived, and Officer Melton went to the Kahlua Bar, located about 50 feet away in county territory, and found its front door open and its coin machines broken into. He placed Rogers under arrest, searched his car, and found, in addition to the candy and cigarettes, a hammer, flashlight, screwdriver, two six-packs of beer, 21 one-pound cans of Farmer Brothers coffee, and a pea bottle shaker belonging to the Kahlua Bar. Rogers

himself was searched at the police station, and the police found $41 in quarters, some with distinctive red markings used at the Kahlua Bar, $5.00 in dimes, $3.00 in nickels, other change, and 10 keys later identified as the keys to the Alano Club. Cartons of candy and cigarettes and 23 one-pound cans of Farmer Brothers coffee were discovered to be missing from the Alano Club. Rogers was charged and convicted of burglarizing the two premises.

1. *Was there probable cause to detain and question Rogers at the scene? Yes.* "It is well established that a police officer in the discharge of his duties may detain and question a person when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of those duties." (*People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706] ; *People* v. *Mickelson,* 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658].) Most such occurrences involve persons outdoors at night at times and in areas where one would not reasonably expect to see them and whose behavior on the surface suggests some extraordinary activity. (*People* v. *Machel,* 234 Cal.App.2d 37, 43-45 [44 Cal. Rptr. 126] (exhaustive citations).) Here an officer on patrol saw Rogers getting into his car at 4 a.m. at a location where there were neither residences nor open businesses and across the street from establishments which had been frequently burglarized. Although this circumstance did not give the officer probable cause to make an arrest, it did permit him to question Rogers and to investigate what was going on. (*People* v. *McGlory,* 226 Cal.App.2d 762, 765 [38 Cal.Rptr. 373] ; *People* v. *Hanamoto,* 234 Cal.App.2d 6, 11-12 [44 Cal. Rptr. 153].) His questioning produced contradictory answers, and his investigation disclosed cartons of candy and cigarettes strewn around the back of the car. These circumstances properly aroused the officer's suspicion that a crime had been committed and justified him in detaining Rogers until other officers arrived and an investigation of the neighboring premises could be made. On such investigation the Kahlua Bar burglary was discovered. Probable cause then existed for Rogers' arrest and for the search of his vehicle incident to his arrest.

2. *Were Rogers' detention and arrest by a Covina police officer illegal because they took place outside the city limits of Covina? No.* A police officer's authority is normally limited to the boundaries of the jurisdiction for

which he is appointed. When he acts outside his jurisdiction he is generally acting as a private person. (*People* v. *Martin,* 225 Cal.App.2d 91, 94 [36 Cal.Rptr. 924].)

However, criminal offenses which take place just outside the boundary of a particular jurisdiction may be prosecuted within that jurisdiction under authority of Penal Code, section 782: "When a public offense is committed on the boundary of two or more jurisdictional territories, or within 500 yards thereof, the jurisdiction of such offense is in any competent court within either jurisdictional territory." Since authority to prosecute crime extends to offenses which take place just outside the boundaries of a particular jurisdiction, we believe that, *a fortiori*, authority to investigate crime extends beyond the territorial boundaries of a particular jurisdiction in the same manner and to the same extent. ▪ Under authority of section 782 Officer Melton, acting as a police officer, could investigate suspicious circumstances while patrolling the county highway adjacent to the boundaries of the City of Covina and could temporarily detain a suspect on the highway for further investigation in the same manner as though he had discovered him within the territorial boundaries of his own jurisdiction. *People* v. *Williams,* 177 Cal.App.2d 581, 582 [2 Cal.Rptr. 387].)

With respect to the arrest, Penal Code, section 782, likewise authorizes a police officer to make an arrest on or near the boundary of his jurisdiction. Beyond this authority, however, Officer Melton could make an arrest outside his jurisdiction as a private citizen. Penal Code, section 837, authorizes a private person to make an arrest '[w]hen a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it." At the time of arrest Officer Melton had discovered the Kahlua Bar burglary and observed the candy and cigarettes in Rogers' car for which Rogers had no credible explanation. The felony of burglary had in fact been committed, and Officer Melton had reasonable cause to believe that Rogers had committed it. We conclude that Officer Melton was justified in making the arrest, both as a peace officer (Pen. Code, § 782) and as a private person (Pen. Code, § 837).

▪ 3. *Was it an illegal search and seizure to test the keys taken from Rogers on arrest? No.* Rogers was searched when he was booked at the police station, and the articles on his person were removed from his possession and taken into the custody of the police. Some of these were booked as evidence and placed in an evidence locker, and the remaining articles,

including 10 keys, were kept by the police in an individual personal property locker. When Rogers was turned over to the sheriff's office, both sets of articles taken from his person were likewise delivered to the sheriff's custody. At a later time a Covina police officer investigating the burglary of the Alano Club obtained the 10 keys from the sheriff's office, where they were being held for safekeeping along with Rogers' personal effects, and tested them on the locks at the Alano Club. At the trial the keys were identified by Alano Club employees as the club's keys and were admitted in evidence.

Appellant, relying on *People* v. *Burke,* 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67], contends the police should have obtained a search warrant to remove or examine any of his personal. effects in the hands of the sheriff, that when the police without a warrant removed and tested the keys they did so by means of an illegal search and seizure, that the subsequent admission in evidence of these keys was a use of illegally-obtained evidence and, as such, reversible error. In the *Burke* case, the police impounded the defendant's car at the time of his arrest and later broke open the locked trunk of his automobile to secure incriminating evidence. The court held the subsequent entry into the locked trunk of defendant's automobile without a search warrant unauthorized because it had not taken place contemporaneously with the arrest.

We see no resemblance between the *Burke* case and this one. Here a search had been made at the time of Rogers' arrest and booking and the articles on his person had come into the direct and specific custody of the police at that time. ▮ A search of an arrested person at the time of his booking has always been considered contemporaneous to his arrest and is a reasonable search. (*People* v. *Reed,* 202 Cal.App.2d 575, 580 [20 Cal.Rptr. 911] ; *People* v. *Long,* 152 Cal.App.2d 716, 720 [313 P.2d 174] ; *People* v. *Robertson,* 240 Cal.App.2d 99 [49 Cal.Rptr. 345].) ▮ Government Code, section 26640, provides "The sheriff shall take charge of, safely keep, and keep a correct account of, all money and valuables found on each prisoner when delivered at the county jail." (See Pen. Code, §§ 1412, 4003.) This section codifies the long-established right to search a prisoner when he is booked at the police station in order to prevent weapons and contraband from being brought into the jail, and to remove his personal effects from him. (*People* v. *Reed,* 202 Cal.App.2d 575, 579-580 [20 Cal.Rptr. 911] ; *People* v. *Woods,* 139 Cal.App.2d 515, 525 [293 P.2d 901].) Once articles have lawfully fallen into the hands of the

police they may examine them to see if they have been stolen, test them to see if they have been used in the commission of a crime, return them to the prisoner on his release, or preserve them for use as evidence at the time of trial. (*People* v. *Robertson,* 240 Cal.App.2d 99, 105-106 [49 Cal.Rptr. 345].) During their period of police custody an arrested person's personal effects, like his person itself, are subject to reasonable inspection, examination, and test. (*People* v. *Chaigles,* 237 N.Y. 193 [142 N.E. 583, 32 A.L.R. 676], Cardozo, J.) Whatever segregation the police make as a matter of internal police administration of articles taken from a prisoner at the time of his arrest and booking does not derogate the fact of their continued custody and possession of such articles.

A second and independent reason why appellant has no cause to complain about the testing of keys taken from him on his arrest is that the keys were not his property at all but the property of the Alano Club. We see nothing unreasonable in police efforts to determine by investigation the true ownership of articles in their custody which they reasonably suspect to have been stolen. Indeed the Penal Code prevents them from giving back suspected stolen property except on order of a magistrate. (Pen. Code, § 1407.) It seems the height of effrontery for a thief to complain of police examination and testing of property which he has stolen from another and which the police have lawfully removed from his person at the time of his arrest. We find no merit in appellant's contention of unreasonable search and seizure.

The judgment is affirmed. The attempted appeals from the verdict and sentence are dismissed. (*People* v. *Basnett,* 186 Cal.App.2d 108, 112 [8 Cal.Rptr. 804] ; *People* v. *Ambrose,* 202 Cal.App.2d 73, 75 [20 Cal.Rptr. 584].)

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied April 28, 1966, and appellant's petition for a hearing by the Supreme Court was denied June 1, 1966.