97 Cal.Rptr.2d 209 (2000)
81 Cal.App.4th 911
The PEOPLE, Plaintiff and Appellant,
v.
Charles John WALSH, Defendant and Respondent.
No. A085779.
Court of Appeal, First District, Division Four.
May 24, 2000.
Review Granted September 27, 2000.
*211 Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Rene A. Chacon, Supervising Deputy Attorney General, Bridget Billeter, Deputy Attorney General, for Appellant.
Matthew Zwerling Executive Director, L. Richard Braucher, Staff Attorney First District Appellate Project, for Respondent.
*210 REARDON, J.
The San Mateo County District Attorney filed an information charging defendant Charles John Walsh with one count of felony possession of methamphetamine (Health & Saf.Code, § 11377, subd. (a)); one count of misdemeanor possession of a hypodermic syringe (Bus. & Prof.Code, § 4140); and three misdemeanor counts involving driving with a suspended license (Veh.Code, §§ 14601, subd. (a), 14601.5, subd. (a), 14601.2, subd. (a)). The information also alleged various enhancements, including one prior felony conviction (Pen. Code,[1] § 1170.12, subd. (c)); two prior prison terms (§ 667.5, subd. (b)); and ineligibility for probation (§ 1203, subd. (e)(4)). Defendant also suffered three prior convictions within the previous five years for driving with a suspended license. Walsh pleaded not guilty and denied the enhancements.
In June 1998, Walsh moved to dismiss the information pursuant to section 995, contending that because the alleged offenses were committed within San Francisco, the San Mateo Superior Court lacked territorial jurisdiction over his case. He also filed a common law motion to dismiss on the same grounds. The court denied both motions. In October 1998, defendant, through new counsel, moved the court to reconsider its previous ruling. Upon reconsideration, the court granted defendant's motion to dismiss.
The People appealed from the order setting aside the information. (§ 1238, subd. (a)(1).) We conclude that under section 782, the alleged offenses were committed within 500 yards of the San Mateo County line and that San Mateo County therefore had territorial jurisdiction over defendant's case. We reverse.

I. FACTS
Approximately 4:00 a.m. on May 9, 1998, Officer Gregg Oglesby of the Daly City Police Department was on patrol traveling east on Geneva Avenue near the border of the City and County of San Francisco and the County of San Mateo. Officer Oglesby saw a pickup truck, traveling west, approximately 200 yards west of the intersection of Geneva Avenue and Carter Street. Unsure if the truck had the required light bulb over its rear license plate, the officer made a U-turn and followed the pickup west along Geneva Avenue. Observing that the truck had neither a light bulb nor a license plate, Officer Oglesby stopped the vehicle at Geneva Avenue and Athens Street.
Defendant Walsh and two passengers were in the vehicle. When the officer asked Walsh for his driver's license, Walsh told him that he did not have one because it had been suspended. The officer ordered Walsh out of the vehicle and, during a search of his person, found a "hard green transparent plastic case" containing "a quantity of white crystalline powder that [Oglesby] believed to be a controlled substance" in Walsh's left breast pocket. The powder was later determined to be 0.27 grams of methamphetamine. Oglesby also found a hypodermic syringe in Walsh's left front pants pocket.
At the preliminary hearing, Officer Oglesby testified that Walsh's vehicle was within the City and County of San Francisco throughout his observations. At no time did he observe the vehicle "in Daly City or the County of San Mateo." After first determining the officer's ability to *212 estimate distances, the court asked him whether the defendant was "within 500 yards or outside of 500 yards" of the county line. The officer testified that defendant was within 500 yards of the county line when he first saw the vehicle and when he first observed the traffic violations. The officer acknowledged that the site of the traffic stop was more than 500 yards from the county line.
At the conclusion of the preliminary hearing, defendant moved to dismiss the complaint on the grounds that it should not be tried in San Mateo County. The magistrate found sufficient evidence to support a holding order. "Consistent with Penal Code section 782, the observed driving was within 500 yards, and circumstantially the defendant was possessing the methamphetamine within the same 500 yards."
At the later hearing in the superior court, the officer's estimates were corroborated by referring to a topographic map drawn to scale and obtained from the Daly City Civil Engineer's Office. It was stipulated that the officer first observed defendant's vehicle at a point marked "X-l" on the map, and that the officer stopped defendant at a point marked "X-3" on the map. They stipulated that the point represented by "X-l" was about 1,300 feet, or less than 1,500 feet (500 yards), from the San Francisco-Daly City border, which coincides with the San Francisco-San Mateo county line. The point represented by "3" was more than 500 yards from the boundary line. Following that hearing, the court granted a defense motion to reconsider its earlier ruling denying a defense motion to dismiss, and granted the motion to dismiss.

II. DISCUSSION

A. Venue is Proper in San Mateo County[2]
Section 777 states the basic rule of venue in criminal cases: "[E]xcept as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed." One exception to section 777 is found in section 782, which provides: "When a public offense is committed on the boundary of two or more jurisdictional territories, or within 500 yards thereof, the jurisdiction of such offense is in any competent court within either jurisdictional territory." (Italics added.) When used with reference to a superior court, the words "jurisdictional territory" mean "the county in which the court sits." (§ 691, subd. (b).) Thus, if the crimes with which defendant was charged were committed within 500 yards of the boundary line between the City and County of San Francisco and San Mateo County, jurisdiction over those offenses lies with the superior court within either county.
The record is undisputed that when Officer Oglesby first observed defendant's vehicle, it was in San Francisco but within 500 yards of the San Mateo County boundary line. The officer's first observation of the Vehicle Code violations also took place while the vehicle was within 500 yards of the county line. It is equally undisputed, however, that the actual traffic stop and the discovery of the drug-related possession offenses took place more than 500 yards from the San Mateo County boundary line.[3] For purposes of applying section 782, however, the issue is whether the *213 crimes were committed within 500 yards of the county boundary line.
There is no dispute that defendant was driving within 500 yards of the San Mateo County line before and after Officer Oglesby first observed his vehicle. Likewise, there is no indication that defendant stopped his vehicle from the time of that initial observation until the officer stopped him at Geneva Avenue and Athens Street. The only reasonable inference in these circumstances is that defendant possessed the methamphetamine and syringe throughout that entire time period. The fact the actual police stop took place at a locale more than 500 yards from the county line is irrelevant. Walsh had already committed the possession crimes when he was first observed driving within the jurisdictional reach of San Mateo County. A methamphetamine possession offense is complete when a defendant possesses a usable amount of a controlled substance, with knowledge of its presence and its nature as a controlled substance. (See CALJIC No. 12.00.) The officer's subjective knowledge of the existence of the crime is not an element of the offense. As defendant committed the offense within 500 yards of the San Mateo County line, jurisdiction to try those offenses existed with the superior court of either county. (§ 782.) Venue was proper in San Mateo County.

B. There Was No Violation of Defendant's Right of Vicinage

Defendant contends that even if San Mateo was a proper venue, the trial court's dismissal of his case was correct on the grounds that prosecution of his case within San Mateo County would violate his vicinage rights. He argues that section 782, as applied, is unconstitutional because it violates his right to a jury drawn from the community in which the crime was committed.
The constitutional basis of the right of vicinage is found in the Sixth Amendment which provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law...." (U.S. Const., 6th Amend.) "The constitutional specification is geographic; and the geography prescribed is the district or districts within which the offense is committed." (United States v. Anderson (1946) 328 U.S. 699, 704-705, 66 S.Ct. 1213, 90 L.Ed. 1529, italics added, fn. omitted.) For purposes of federal trials, the districts previously ascertained by law are the federal judicial districts established by Congress. (Hernandez, supra, 49 Cal.3d at p. 721, 263 Cal.Rptr. 513, 781 P.2d 547.)
The vicinage requirement is an essential part of the right to trial by jury, binding on the states under the Fourteenth Amendment. (Hernandez, supra, 49 Cal.3d at p. 721, 263 Cal.Rptr. 513, 781 P.2d 547.) Moreover, while not expressly provided for in the California Constitution, the common law right to trial by jury selected from the vicinage is implied in the general guarantee that "[t]rial by jury is an inviolate right and shall be secured by all...." (Cal. Const., art. I, § 16; see Hernandez, supra, 49 Cal.3d at p. 721, 263 Cal.Rptr. 513, 781 P.2d 547; People v. Powell (1891) 87 Cal. 348, 25 P. 481.)
Each side relies heavily on our Supreme Court's decision in Hernandez, a case which involved the proper court for trial within Los Angeles County. Defendant, understandably, emphasizes the court's ultimate statement that "in California the boundaries of the vicinage are coterminous with the boundaries of the county." (Hernandez, supra, 49 Cal.3d at p. 729, 263 Cal.Rptr. 513, 781 P.2d 547, fn. omitted.) The Attorney General argues that that statement should not be construed as a holding that the Sixth Amendment prohibits a vicinage district extending beyond a single county. He argues that the Hernandez court was not faced with and did *214 not decide the question of proper vicinage where the Legislature sets a jurisdictional district encompassing more than one county.
In Hernandez, the Supreme Court, after discussing the historical antecedents of the right of vicinage, stated that "[j]urors are no longer permitted, let alone required, to possess personal knowledge of the crime; our citizens are no longer threatened with transportation across the seas for criminal trials. Transformations in our government as well as in our society make clear that narrowly interpreting the vicinage requirement is no longer warranted." (Hernandez, supra, 49 Cal.3d at p. 722, 263 Cal.Rptr. 513, 781 P.2d 547, italics added.)
The Attorney General notes that the main thrust of the Hernandez decision was to expand the concept of vicinage as applied in Los Angeles County by retracting from the more restrictive definition of vicinage it had set out in People v. Jones (1973) 9 Cal.3d 546, 108 Cal.Rptr. 345, 510 P.2d 705. In Jones, the court had held that a criminal defendant was denied his vicinage right when his case was transferred from the Central District to the Southwest District within Los Angeles County, where he would be tried by a jury that did not include residents of the Central District where the offenses were committed. (Id. at p. 553, 108 Cal.Rptr. 345, 510 P.2d 705.) In Hernandez, which involved the transfer of a case between branches of the Municipal Court for the Los Angeles Judicial District, the Supreme Court concluded that Jones was incorrectly decided. (Hernandez, supra, 49 Cal.3d at p. 724, 263 Cal.Rptr. 513, 781 P.2d 547.) It was in that context that the court, in overruling Jones, stated that "the boundaries of the vicinage are coterminous with the boundaries of the county." (Id. at p. 729, 263 Cal.Rptr. 513, 781 P.2d 547, fn. omitted.)[4]
Defendant cites several cases in which he argues that appellate courts have extended vicinage rights to particular venue statutes, which are exceptions to section 777. In each of these situations, however, the legislative exception to section 777 has been upheld. In People v. Campbell (1991) 230 Cal.App.3d 1432, 281 Cal.Rptr. 870, for example, the Court of Appeal held that neither section 781 nor section 786 abridged vicinage rights. (Id. at p. 1447, 281 Cal.Rptr. 870.) Similarly, section 790, which provides for venue in a county in which a murder victim is found, was upheld in People v. Martin (1995) 38 Cal. App.4th 883, 888-889, 45 Cal.Rptr.2d 502.
The Sixth Amendment requires trial "by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law...." The cases demonstrate that the constitutionally required vicinage "district" is not necessarily limited to the county in which the acts constituting elements of the offense take place. When it enacted section 782 in 1872, the California Legislature ascertained that trial is appropriate in more than one county if an offense is committed on or within 500 yards of a county boundary. Section 782, in effect, creates a "district" of partially overlapping counties for vicinage purposes which, under the facts of this case, would include both San Mateo and San Francisco Counties. (See People v. Martin, supra, 38 Cal.App.4th at p. 889, 45 Cal.Rptr.2d 502.) Trial is proper with jurors drawn from any portion of that "district." To the extent defendant argues that he would be deprived *215 of the right to have San Francisco residents on his jury, "there is no constitutional right to have jurors drawn from the entire district in which the crime occurred." (Hernandez, supra, 49 Cal.3d at pp. 724-725, 263 Cal.Rptr. 513, 781 P.2d 547, italics added.) Trial in San Mateo County by jurors drawn solely from San Mateo County would not violate the vicinage requirements of the federal or state Constitutions. (Ibid.)
If we consider that in the federal context, Congress is free to redistrict at its pleasure, and that some federal districts may be as large as an entire state (see, e.g., 28 U.S.C. §§ 81A [Alaska], 82 [Arizona], 91 [Hawaii], 117 [Oregon]), we are satisfied that no constitutional right of defendant is violated by permitting the prosecution of this case to take place in San Mateo County. (Cf. People v. Powell (1974) 40 Cal.App.3d 107, 123, 115 Cal. Rptr. 109.)

III. DISPOSITION
The order granting defendant's motion to dismiss the information is reversed.
POCHÉ, Acting P.J., and SEPULVEDA, J., concur.
NOTES
[1] Unless otherwise stated, all further section references are to the Penal Code.
[2] Venue and vicinage are related but distinct concepts. Venue relates to the proper place of trial. The vicinage right is a geographic requirement relating to the right of a criminal defendant to be tried by a jury drawn from the area in which the crime occurred. (Hernandez v. Municipal Court (1989) 49 Cal.3d 713, 716, fn. 1, 263 Cal.Rptr. 513, 781 P.2d 547 (Hernandez).)
[3] The locations were adequately established by Officer Oglesby's testimony and the use of the civil engineer's map introduced into evidence. (People v. Williams (1960) 177 Cal. App.2d 581, 582, 2 Cal.Rptr. 387.)
[4] In People v. Taylor (1976) 39 N.Y.2d 649 [385 N.Y.S.2d 270, 350 N.E.2d 600], a case cited approvingly by our Supreme Court in Hernandez, supra, 49 Cal.3d at page 727, 263 Cal.Rptr. 513, 781 P.2d 547, the New York Court of Appeals stated that in applying the Sixth Amendment right of vicinage to the states, a defendant's rights in this regard have been governed by "the common-law right to be tried by a jury from the county where the crime was committed unless the Legislature provides otherwise." (Taylor, supra, 385 N.Y.S.2d 270, 350 N.E.2d at p. 602, italics added.)